SJ2020CV05909 02/11/2020 04:54:06 pm Entrada Núm. 1 Página 1 de 2

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE PRIMERA INSTANCIA
Sala Superior de

| | |
|---|---|
| VANESSA SACARELLO<br><br>Querellante<br><br>v.<br><br>AMERICAN AIRLINES, INC.<br><br>Querellada | CASO NÚM. SJ2020CV05909<br><br>Sala Núm. 804<br><br>Sobre: PROCEDIMIENTO SUMARIO LABORAL |

**EMPLAZAMIENTO**
**LEY DE PROCEDIMIENTO SUMARIO DE RECLAMACIONES LABORALES**

ESTADOS UNIDOS DE AMÉRICA
EL PRESIDENTE DE LOS ESTADOS UNIDOS
EL ESTADO LIBRE ASOCIADO DE PUERTO RICO

RECEIVED
NOV 13 2020
REICHARD & CALAF P.S.C.

A:    AMERICAN AIRLINES, INC.
Nombre de la parte querellada que se emplaza

AEROPUERTO LUIS MUÑOZ MARIN, CAROLINA, PR
Dirección de la parte querellada que se emplaza

POR LA PRESENTE, se le emplaza, con copia de la querella radicada en su contra al amparo de la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, apercibiéndole que deberá presentar al Tribunal su contestación por escrito a través del Sistema Unificado de Manejo y Administración de Casos (SUMAC), al cual puede acceder utilizando la siguiente dirección electrónica: https://unired.ramajudicial.pr, salvo que se represente por derecho propio, en cuyo caso deberá presentar su alegación responsiva en la secretaría del tribunal; con constancia de haber servido copia de la misma al (a la) abogado(a) de la parte querellante o a esta si hubiere comparecido por derecho propio, dentro de diez (10) días de haber sido diligenciado este emplazamiento, si este se hiciere en la Región Judicial donde se promueve la acción y dentro de quince (15) días en los demás casos. Se le apercibe, además, que, si así no lo hiciere, se dictará sentencia en su contra, concediendo el remedio solicitado, sin más citarle ni oírle.

LCDO. ENRIQUE J. MENDOZA SÁNCHEZ / LCDO. ENRIQUE J. MENDOZA MÉNDEZ
Nombre del (de la) abogado(a) de la parte querellante, o de la parte, si no tiene representación legal

21143 / 8304
Número ante el Tribunal Supremo, si es abogado(a)

P.O. BOX 9282

SAN JUAN, PUERTO RICO 00908-0282
Dirección

(787) 722-5522
Número de teléfono; número de fax

mendozalo@yahoo.com
Correo electrónico

02 NOV 2020

Expedido bajo mi firma y sello del Tribunal, el ____ de _____ de ____.



Griselda Rodríguez Collado
Secretaria Regional
María Otaola Rodríguez
Por: _____
Nombre y Firma del (de la)
Secretario(a) Auxiliar del Tribunal

SJ2020CV05909 02/11/2020 04:54:06 pm Entrada Núm. 1 Página 2 de 2

## DILIGENCIAMIENTO POR PERSONA PARTICULAR

Yo, _Carlos Soto Apnt_, declaro tener capacidad legal conforme la Regla 4.3 de Procedimiento Civil de Puerto Rico, y certifico que el diligenciamiento del emplazamiento y de la querella del caso de referencia fue realizado por mí, el _13_ de _Noviembre_ de 2020, de la siguiente forma:

Mediante entrega personal a la parte demandada en la siguiente dirección física: _CT Crop a traves de Lcdo Federico Calaf - Representante CT. Corp._

Accesible en la inmediata presencia de la parte demandada en la siguiente dirección física: _361 San Fco. Street 4th P750 San Juan P.R. 00901-1748_

Dejando copia de los documentos a un(a) agente autorizado(a) por la parte demandada o designada por ley para recibir emplazamientos en la siguiente dirección física: _____

No se pudo diligenciar el emplazamiento personalmente debido a que _____

### COSTOS DEL DILIGENCIAMIENTO
$_____

### DECLARACIÓN DEL (DE LA) EMPLAZADOR(A)

Declaro bajo pena de perjurio, conforme a las leyes del Estado Libre Asociado de Puerto Rico, que la información provista en el diligenciamiento del emplazamiento es verdadera y correcta.

Y PARA QUE ASÍ CONSTE, suscribo la presente en _San Juan_, Puerto Rico, hoy día _13_ de _Noviembre_ de 2020.

(Firma del (de la) Emplazador(a))

Dirección del (de la) Emplazador(a): _____

AFIDÁVIT NÚM. _____

Jurado(a) y suscrito(a) ante mí por _____, de las circunstancias personales anteriormente mencionadas, a quien doy fe de conocer,

(conocimiento personal o, en su defecto, la acreditación del medio supletorio provisto por la Ley Notarial)

En _____, Puerto Rico, hoy día ____ de _____ de 2020.

NOTARIO (A)

**ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE PRIMERA INSTANCIA
SALA SUPERIOR DE SAN JUAN
CENTRO JUDICIAL DE SAN JUAN**

| | |
|---|---|
| VANESSA SACARELLO<br><br>QUERELLANTE<br><br>v.<br><br>AMERICAN AIRLINES, INC.<br><br>QUERELLADO | CIVIL NÚM: _____<br><br>Procedimiento Sumario Laboral |

**QUERELLA**

AL HONORABLE TRIBUNAL:

COMPARECE la parte querellante, Vanessa Sacarello ("Sacarello"), representada por su abogado que suscribe y muy respetuosamente, ALEGA, EXPONE Y SOLICITA:

1. La parte querellante lo es la señora Vanessa Sacarello ("Sacarello"), cuya dirección residencial y postal y teléfono son los siguientes: Condominio Monte Real, 100 Carretera 877, Apartamento 106, San Juan, Puerto Rico 00926 y teléfono (787) 342-2820.

2. La parte querellada lo es American Airlines, Inc. ("AA"), es una empresa en la industria de líneas aéreas que ofrece sus servicios en Puerto Rico, entre otros, en el Aeropuerto Internacional Luis Muñoz Marín, Carolina, Puerto Rico. Su Agente Residente lo es CT Corporation System, Calle San Francisco, Número 361, Viejo San Juan, Puerto Rico 00901.

3. Se invoca el procedimiento sumario laboral dispuesto en la Ley 2-1961, según enmendada, 32 L.P.R.A. 3113 y ss. ("Ley 2"). La Ley 2 dispone que las reclamaciones judiciales pueden presentarse ante la Sala de Tribunal de Primera Instancia del distrito judicial donde resida la querellante o donde se rindieron los trabajos para el patrono. En este caso la querellante reside en el distrito judicial de San Juan. Por tanto, la Sala Superior de San Juan del Tribunal de Primera Instancia tiene competencia para atender este caso.

Nota: * Exento de cancelar sellos, pues se trata de un caso bajo el procedimiento sumario laboral, Ley Núm. 2 del 17 de octubre de 1961, según enmendada, 32 L.P.R.A. 3118 y ss; *Valentín v. Housing Promoters, Inc.*, 146 D.P.R. 712 (1998).

4. Sacarello trabajó para AA desde el mes de marzo de 1979 hasta el 30 de septiembre de 2020. Comenzó en AA a los 19 años de edad como Secretaria del "Purchasing Agent". Subsiguientemente, ocupó diversas posiciones tales como: Contabilidad; Presupuesto; "Customer Services Agent"; "Lead Agent"; "Customer Services Supervisor"; "Customer Services Manager". Como "Customer Services Manager" reportaba al Sr. José Rucabado, General Manager. Era la "Customer Services Manager" de mayor antigüedad en AA en Puerto Rico.

5. La posición de "Customer Services Manager" es una bien comprensiva. Dicha posición incluye tareas conocidas como "below the wing" que se refiere al área de rampas y tareas conocidas como "above the wing" que se refiere a tareas en los terminales como Ticket Center; área de equipaje e interacción con Aerostar; Contratos de Servicios (como Antilles) y Transportation Security Administrator ("TSA") y salidas del aeropuerto.

6. Las responsabilidades del "Customer Services Manager" son: (1) ofrecer un servicio de calidad y obtener la mayor satisfacción del cliente; (2) cumplir con las metas de rentabilidad y control de gastos y costos; (3) asegurarse del cumplimiento con la reglamentación de seguridad, los procesos operacionales y las guías federales aplicables; (4) proveer a los miembros de su equipo un trato justo, razonable y equitativo; (5) correr una operación efectiva.

7. Sacarello siempre se desempeñó a nivel de excelencia en todos los puestos ocupados en AA y muy especialmente, como "Customer Services Manager", posición que ocupó por treinta (30) años.

8. Durante el periodo comprendido entre el 6 de abril de 2020 al 28 de junio de 2020 Sacarello estuvo en una licencia administrativa, la cual se le pagaba el 23% de su salario regular, a una tarifa de $9.41 por hora, o sea, $1,505.54 mensuales.

9. A fines del mes de mayo de 2020 AA anuncia que habría de implantar una reducción masiva de la plantilla en el Aeropuerto Internacional Luis Muñoz Marín, la cual seria de un 30% o más de los empleados gerenciales. En ese entonces, el Sr. José Rucabado, Gerente de AA en la operación del Aeropuerto

2

Luis Muñoz Marín y la señora Mildred Fuentes Viera, Gerente de Aeropuerto, hacen una conferencia telefónica en la cual participan los tres (3) "Customer Services Manager", la señora Sally Pérez; el Sr. Felipe Otero y Sacarello; dos (2) empleadas de plazas Clericales, a saber: la señora Ana Carrión (Asistente del General Manager Sr. José Rucabado) y la Sra. Irma Matos (con funciones de finanzas) y un Gerencial Nivel 2, la señora Maryl Mendoza. La agenda de la mencionada reunión fue para abordar el tema de la reducción de la plantilla de AA en el Aeropuerto Internacional Luis Muñoz Marín.

10. En tal reunión, la Gerencia de AA confirma que la empresa anunció y procederá con una reducción general de empleo de un treinta por ciento (30%) de la plantilla, pero que la proyección es que la reducción habría de ser aún mayor dependiendo de la ciudad y los vuelos a ser reducidos. Nunca se informó el reclutamiento de nuevo personal como parte del proceso de reducir la plantilla de AA en el Aeropuerto Internacional Luis Muñoz Marín. Tampoco se informó que se retendría (como efectivamente ocurrió) al menos una posición de "Customer Services Manager", pues de ello haberse informado le correspondía a Sacarello ser retenida en su posición al aplicarse el orden de retención establecido en la Ley 80 y no hubiese aceptado el paquete de beneficios voluntarios.

11. En ese momento, se informó que se estarían ofreciendo unos paquetes de beneficios voluntarios y que no se estaría ofreciendo indemnización alguna por despido o mesada en ley, pues se trataba de despidos justificados por una reducción legítima de empleo. Además, informaron que el empleado que no aceptara estos beneficios no recibiría pago o beneficio adicional alguno a su despido. Repetimos, nunca se informó que habría el reclutamiento de nuevo personal luego de las renuncias y los despidos. Tampoco se informó que se retendría (como efectivamente ocurrió) al menos una posición de "Customer Services Manager", pues de ello haberse informado le correspondía a Sacarello ser retenida en su posición al aplicarse el orden de retención establecido en la Ley 80 y no hubiese aceptado el paquete de beneficios voluntarios.

3

12. Muy específicamente, el 27 de mayo de 2020 AA hace un anuncio oficial por escrito que, entre otras cosas, indica: "Additionally, running a smaller airline means we will need a management and support staff team that is roughly 30% leaner"). Dicho anuncio claramente implica que no se reclutaría personal adicional. Tampoco se informó que se retendría (como efectivamente ocurrió) al menos una posición de "Customer Services Manager", pues de ello haberse informado le correspondía a Sacarello ser retenida en su posición al aplicarse el orden de retención establecido en la Ley 80 y no hubiese aceptado el paquete de beneficios voluntarios.

13. Sacarello insistió en que se le informara el número real de las reducciones de empleo en Puerto Rico y nunca se lo precisaron. Siempre se le indicó que habría reducción de empleados y que si no aceptaba el paquete de beneficios no obtendría ningún otro beneficio de ser despedida. Nuevamente, nunca se le dijo que habrían nuevos reclutamientos y mucho menos para realizar sus funciones y tareas. Tampoco se informó que se retendría (como efectivamente ocurrió) al menos una posición de "Customer Services Manager", pues de ello haberse informado le correspondía a Sacarello ser retenida en su posición al aplicarse el orden de retención establecido en la Ley 80 y no hubiese aceptado el paquete de beneficios voluntarios.

14. Sacarello optó por acogerse al plan de beneficios voluntarios bajo el convencimiento de que a tenor con lo implicado por los anuncios de la Gerencia de AA su posición habría de ser impactada por la reducción de empleo y que no habrían oportunidades alternas de empleo viables para ella. En esencia, el plan de beneficio era estar en una la licencia administrativa del 29 de junio de 2020 al 30 de septiembre de 2020, cobrando un treinta y tres porciento (33%) del salario a una tarifa de $12.42 por hora, o sea, $1,987.30 mensuales. El pago por estos tres (3) meses que de aproximadamente $11,314.14. Ciertamente, no había justificación alguna para ofrecer a Sacarello un paquete de beneficios de $11,314.14 si su posición no se iba a eliminar (máxime cuando, como veremos más adelante, su mesada bajo la Ley 80 era de $216,524.00). Sin embargo, AAA le ocultó a Sacarello que su posición iba a mantenerse.

15. El salario anual más alto devengado por Sacarello en sus últimos tres (3) años en AA fue de $74,073.64 anual (o sea, $6,172.80 mensual, $1,424.50 semanal).

16. La mesada de Sacarello bajo las disposiciones de la "Ley de Despidos Injustificados", Ley 80-1976, según enmendada, 29 L.P.R.A. 185ª, ("Ley 80") asciende a una indemnización básica de seis (6) meses de salarios, a saber: $37,037.00 y una indemnización progresiva equivalente al salario de tres (3) semanas por cada año completo de servicios, o sea 42 años, para el salario de 126 semanas x $1,424.50 por semana = $179,487.00. El total de la mesada es de $216,524.00.

17. Como ya vimos, el paquete de beneficios voluntarios fue del 33%, de salario de mediados de junio de 2020 hasta el 30 de septiembre de 2020, o sea $11,314.44 y el plan médico por 18 meses luego de 30 de septiembre de 2020.

18. El paquete voluntario se ofreció para mitigar los efectos de un despido justificado. Sin embargo, si se iba a mantener al menos una posición de "Customer Services Manager" no habia la necesidad de acercarse a Sacarello para dejar su empleo a cambio de una modesta prestación. El hecho de mero ofrecimiento implicaba que se le despediría.

19. Sacarello aceptó el paquete de beneficios voluntarios bajo el convencimiento de que sería despedida y desconociendo que su posición se mantendría.

20. El paquete voluntario no requería el suscribir un Acuerdo de Relevo de Responsabilidad.

21. Luego de aceptar el paquete voluntario de beneficio, entonces fue que se le requirió el suscribir un Acuerdo de Relevo de Responsabilidad como condición al pago de los beneficios en cuestión.

22. El Acuerdo de Relevo de Responsabilidad no incluía expresamente un relevo de pago de la mesada bajo la Ley 80.

23. Ante las representaciones de la Gerencia de AA lo razonable era concluir su despido por reducción de empleo y por tanto, por justa causa, el ofrecimiento resultaba (aunque poco atractivo económicamente, a saber $11,314.44, cuando

5

la mesada en ley de Sacarello es de $216,524.00) ser entonces una contraprestación justa y equitativa. La alternativa era ser despedida y no recibir nada. Además, desconocía que habría oportunidades de empleo. Sólo se habló de la reducción de la plantilla de AA en el Aeropuerto Luis Muñoz Marín. Sacarello mucho menos conocia (pues se le ocultó) que al menos se retendría una posición de "Customer Services Manager".

24. A Sacarello previo a aceptar el paquete de beneficios voluntarios y firmar el Acuerdo de Responsabilidad nunca se le indicó que se mantendría su plaza, ni que se reclutaría personal nuevo para asumir sus funciones y tareas inmediatamente luego de su desvinculación con la empresa. El mantener al menos una de las posiciones de "Customer Services Manager" hacía innecesario el despido de Sacarello. Además, si habría reclutamiento de personal para hacer sus labores y funciones por tal motivo adicional se convertía también en injustificado su despido, (si no se seguía el orden de reclutamiento por antigüedad). Dicho en otras palabras, Sacarello no tan solo tenía derecho a ser retenida en su empleo (pues era la empleada de más antigüedad en su posición), sino que de haber sido despedida tenía derecho bajo la Ley 80 a ser reempleada si los servicios o labores iguales o similares a las que ella desempeñaba eran necesarias dentro de los seis (6) meses subsiguientes a su despido y se iba a reclutar personal para realizar tales tareas y funciones. Como hemos visto, sus servicios continuaron siendo necesarios al punto de mantener una posición de "Customer Services Manager" y de reclutarse inmediatamente personal adicional para realizar sus tareas y funciones. Tampoco se informó que se retendría (como efectivamente ocurrió) al menos una posición de "Customer Services Manager", pues de ello haberse informado le correspondía a Sacarello ser retenida en su posición al aplicarse el orden de retención establecido en la Ley 80 y no hubiese aceptado el paquete de beneficios voluntarios.

25. Como ya vimos, Sacarello era la empleada más antigua en su plaza y por tanto, de mantenerse al menos una posición de "Customer Services Manager" y de ser necesarios servicios iguales o similares a los que ella realizaba tenía el

6

derecho a retener su empleo o a ser reinstalada. De Sacarello haber sido informada que se mantendría una posición de "Customer Services Manager" y que se reclutaría nuevo personal no hubiese aceptado renunciar a cambio de los limitados beneficios ofrecidos. Simple y llanamente, hubo un ocultamiento fraudulento deliberadamente para inducir a Sacarello a aceptar un arreglo para dejar la empresa que de conocer con precisión todas las circunstancias presentes y conocidas por AA nunca hubiese aceptado. De hecho, si la intención de AA era retener al menos una posición de "Customer Services Manager" y además, tener necesidad de funciones iguales o similares a las realizadas por Sacarello (al punto de reclutar nuevo personal adicional), entonces, AA no debió ni tan siquiera ofrecérsele a Sacarello los beneficios en cuestión. El extenderle los beneficios por efectos de la reducción de personal no era necesario si su posición no iba a ser afectada por la reducción de empleo. Todo lo ocurrido demuestra *a posteriori* con que Sacarello fue inducida a dejar su empleo mediante ocultamiento de información necesaria y disponible a AA y además, mediante representaciones que no reflejaban la totalidad de las circunstancias aquí relevantes. Tampoco se informó que se retendría al menos una posición de "Customer Services Manager", pues de ello haberse informado le correspondía a Sacarello ser retenida en su posición al aplicarse el orden de retención establecido en la Ley 80 y no hubiese aceptado el paquete de beneficios voluntarios.

26. El Sr. José Rucabado, Gerente General, entonces, al advenir en conocimiento de que se mantendría al menos una posición de "Customer Services Manager" y que además una vez Sacarello suscribiera el paquete de beneficios voluntarios, entonces, interviene para que no le den curso a la aceptación de los paquetes de beneficios voluntarios y se llamara a Sacarello a su empleo. El reclamo del Sr. Rucabado fue ignorado. El Sr. Rucabado fue entonces despedido.

27. Resulta que al menos una posición de "Customer Services Manager" era mantenida y que funciones iguales o similares a las que Sacarello realizaba no fueron finalmente eliminadas y se reclutó persona adicional más joven y de

7

menos experiencia. Además, si se iba a retenerse personal menos antiguo que Sacarello en su posición, debió dársele la oportunidad a ella a tenor con el orden de retención dispuesto en la Ley 80, en lugar de inducirla a aceptar el paquete limitado de beneficio para uso de la empresa. Por tanto, si se mantenia (como se mantuvo) una posición de "Customer Services Manager" y se reclutaría personal nuevo adicional para realizar las tareas y funciones de Sacarello, la salida de empleo de Sacarello resulta ser un despido injustificado. Ella acepta el paquete de beneficios voluntarios ante representaciones que razonablemente implicaban que no se mantendría posición alguna de "Customer Services Manager" y además, que no se planeaban nuevos reclutamientos. Deliberadamente se le ocultó que se mantendria una posición de "Customer Services Manager" y, además, se le ocultó que se proyectaba reclutar personal adicional para realizar sus funciones. Los actos de AA fueron dirigidos a inducir a Sacarello a dejar su empleo bajo falsas representaciones y deliberado ocultamiento de la verdad. La única alternativa razonable de Sacarello era aceptar un modesto paquete voluntario de beneficios ante un despido inminente respecto al cual no recibiría pago alguno.

28. Repetimos, si AA no hubiese ocultado sus verdaderas intenciones y hubiese divulgado de buena fe las circunstancias totales conocidas, Sacarello no hubiese aceptado irse de su empleo a cambio de un modesto paquete de beneficios.

29. Solicitamos se le indemnice a Sacarello la mesada correspondiente bajo la Ley 80, a saber.

30. El relevo de responsabilidad firmado por Sacarello con AA no es un contrato de transacción válido a tenor en el Artículo 1716 del Código Civil de Puerto Rico, 31 L.P.R.A. 4828.

31. El consentimiento prestado por Sacarello está viciado, pues fue prestado por error, intimidación y dolo. Artículos 1217 del Código Civil de Puerto Rico, 31 L.P.R.A. 3402.

32. La ausencia de un consentimiento válido de Sacarello produce la nulidad de lo acordado.

33. El consentimiento prestado por Sacarello está viciado porque a ella deliberadamente se le engañó haciéndole creer que se le despediría. No se le informó que la intención era abrir su posición y/o funciones iguales o similares a las desempeñadas por ella una vez hubiese firmado el Acuerdo. Se le ocultó que se reclutaría nuevo personal. Sólo se le habló de reducciones de empleo. Se le dio a entender que si no aceptaba el plan de beneficios se le despediría y no tendría beneficio o derecho alguno. Se le informó que los despidos eran por justa causa. Tampoco se informó que se retendría al menos una posición de "Customer Services Manager", pues de ello haberse informado le correspondía a Sacarello ser retenida en su posición al aplicarse el orden de retención establecido en la Ley 80 y no hubiese aceptado el paquete de beneficios voluntarios.

34. Bajo el Act.4.10 de la Ley 4-2017, 29 L.P.R.A. 185i, para poderse transigir válidamente el derecho a la mesada bajo la Ley 80 tienen que estar presente todos requisitos de un contrato de transacción válido. Aquí no hay un contrato de transacción válido. El consentimiento está viciado y no hubo suficiente causa. Ello hace nulo el acuerdo y por ende, inexigible.

35. Además, como ya hemos visto, el Acuerdo no incluye una renuncia expresa a la mesada dispuesta en la Ley 80.

POR TODO LO CUAL, se solicita muy respetuosamente del Honorable Tribunal el que declare con lugar esta Querella y en su consecuencia adjudique que a Sacarello le corresponda el beneficio de la mesada dispuesta en la Ley 80; que fue efectivamente inducida con falsas representaciones y dolo a dejar su empleo a cambio de un paquete de beneficios voluntarios; que el Acuerdo de Relevo de Responsabilidad es nulo por ausencia de consentimiento válido y suficiente causa, y se concedan honorarios de abogados, costas y gastos de intereses.

RESPETUOSAMENTE SOMETIDO.

En San Juan, Puerto Rico, a 2 de noviembre de 2020.

f/ Enrique J. Mendoza Sánchez
ENRIQUE J. MENDOZA SÁNCHEZ
RUA: 21143

f/ Enrique J. Mendoza Méndez
ENRIQUE J. MENDOZA MÉNDEZ
RUA: 8304

***MENDOZA LAW OFFICES***
P.O. Box 9282
San Juan, Puerto Rico 00908-0282
Tels. (787) 722-5522; 5530; 5540
Fax. (787) 723-7057
mendozalo@yahoo.com

Nota: * Exento de cancelar sellos, pues se trata de un caso bajo el procedimiento sumario laboral, Ley Núm. 2 del 17 de octubre de 1961, según enmendada, 32 L.P.R.A. 3118 y ss; *Valentín v. Housing Promoters, Inc.*, 146 D.P.R. 712 (1998).