IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| VANESSA SACARELLO<br><br>**Plaintiff and Counter-defendant**<br><br>V.<br><br>AMERICAN AIRLINES, INC.<br><br>**Defendant and Counterclaimant** | **CIVIL NO.** 20-1661 (RAM)<br><br>(LEAD CASE) |
| SALLY PÉREZ-RODRÍGUEZ<br><br>**Plaintiff and Counter-defendant**<br><br>V.<br><br>AMERICAN AIRLINES, INC.<br><br>**Defendant and Counterclaimant** | **CIVIL NO.** 20-1684 (RAM)<br><br>(MEMBER CASE) |

### OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Defendant and Counter-plaintiff American Airlines, Inc.'s ("Defendant" or "American Airlines") *Motion to Bifurcate Trial* and *Motion in Limine to Exclude Evidence and/or Argument as to Purported Acts Unknown to Plaintiffs at the Time of Their Resignations* ("*Motion in Limine*") (jointly, "*Motions*"). (Docket Nos. 88 and 111, respectively). For the reasons set forth below, the Court **DENIES** the *Motion to Bifurcate Trial* and **DENIES** the *Motion in Limine*.

## I.  BACKGROUND

Plaintiffs and Counter-defendants Vanessa Sacarello ("Sacarello") and Sally Pérez-Rodríguez ("Pérez-Rodríguez") (jointly, "Plaintiffs") filed separate amended complaints against American Airlines on June 22, 2021. (Docket Nos. 38-39).[1] Plaintiffs -- two former American Airlines employees -- allege that during the COVID-19 pandemic, the company induced them to participate in its "Voluntary Early Out Program for Management & Support Staff" ("VEOP") and to sign a General Release ("Release") through false representations. Id.

American Airlines answered the amended complaints and filed counterclaims on July 6, 2021. (Docket Nos. 40-41). It alleges that Plaintiffs are liable for breach of contract and unjust enrichment because they sued American Airlines in contravention of the Release but retained the money received through the VEOP. Id.

On September 14, 2022, Defendant filed the present *Motion to Bifurcate Trial*. (Docket No. 88). Defendant seeks to bifurcate its counterclaims from Plaintiffs' claims, which Defendant argues involve different witnesses, exhibits, and issues. Id. American Airlines believes that a preliminary bench trial on its counterclaims could obviate the need for a jury trial on

---

[1] Pérez-Rodríguez initially filed a separate suit on November 16, 2020. *See* Case No. 20-cv-1684. That case was consolidated with the present one pursuant to Fed. R. Civ. P. 42 and transferred to the undersigned's docket on January 8, 2021. (Case No. 20-cv-1684, Docket No. 17; Case No. 20-cv-1661, Docket No. 18).

Plaintiffs' claims. Id. Defendant thus posits that separate trials would promote judicial efficacy and avoid juror confusion. Id. Defendant also argues that bifurcation is necessary to avoid unfair prejudice from the jury's consideration of evidence Defendant believes is relevant **only** to its counterclaims but not to Plaintiffs' claims. Id. Plaintiffs filed their opposition on September 15, 2022. (Docket No. 89).

On October 19, 2022, American Airlines filed the present *Motion in Limine*. (Docket No. 111). It seeks to exclude five emails from June 11-19, 2020 that Plaintiffs were not aware of prior to their resignation and any "testimony or argument regarding acts that occurred after [Plaintiffs'] commitment to resign[.]" Id. at 1. Defendant argues that the evidence and testimony in question is not relevant to Plaintiffs' claims because facts unknown to them when they resigned could not have induced them to resign. Id. at 2-7. Plaintiffs filed their opposition on October 31, 2022. (Docket No. 117).

## II. DISCUSSION

### A. Plaintiffs' Claims

Defendant's theory underlying both the *Motion to Bifurcate Trial* and the *Motion in Limine* is that Plaintiffs' idea of constructive discharge is not supported by Puerto Rico Law No. 80 of May 30, 1976 ("Law 80") -- the basis for Plaintiffs' employment law claim. Plaintiffs' constructive discharge theory is that

Defendant induced them to resign without just cause by leading them to believe that their positions might be eliminated even though the company allegedly knew they would not be. Defendant argues that Law 80 and other constructive discharge caselaw do not support that theory of liability. (Docket Nos. 88 at 6-10; 94 at 5). As stated by Defendant, "[f]or acts to rob an employee of the ability to freely decide, he or she must have known about them." (Docket No. 111 at 4).

Consistent with that view, Defendant argues that (1) the contract issues at play in its counterclaims are distinct from Plaintiffs' employment law claim; and (2) evidence relevant to the Release agreement's validity is irrelevant to the claim for constructive discharge. Therefore, Defendant argues that separate trials and the exclusion of certain evidence from the trial on Plaintiffs' claims is proper.

Defendant's theory contains two errors. First, Defendant does not address Plaintiffs' separate contract law claim of *dolus*. Under Puerto Rico contract law, *dolus* "bars a contracting party from inducing another party through 'words or insidious machinations' to 'execute a contract which without them he would not have made.'" Casco, Inc. v. John Deere Constr. & Forestry Co., 990 F.3d 1, 11 (1st Cir. 2021) (quoting P.R. Laws Ann. tit. 31 § 3408). "Dolus entails bad faith in the formation or performance of a contract." Id. (citing Oriental Fin. Grp., Inc. v. Fed. Ins. Co., 598 F. Supp.

2d 199, 219-221 (D.P.R. 2008)). Because Plaintiffs' *dolus* claim is inextricably tied to Defendant's counterclaims for breach of contract and unjust enrichment, the arguments in Defendant's *Motions* collapse when one considers both claims asserted by Plaintiffs, not just the employment law claim.

Second, Plaintiffs' theory of constructive discharge under Law 80 is novel, but it does not appear to be precluded by the statute or its caselaw. Because the Release agreement's validity is central to that theory of constructive discharge, Plaintiffs' employment law claim has more in common with Defendant's counterclaims than Defendant acknowledges in its *Motions*, which further weakens the arguments therein.

i. Plaintiffs' Contract Law Claim of *Dolus*

The Court first addresses Plaintiffs' *dolus* claim. In its *Motion in Limine*, American Airlines states that "[t]his is not a contractual dispute, but an employment law claim of constructive discharge[.]" (Docket No. 111 at 6 n.4). It is unclear how Defendant concluded that Plaintiffs only assert a Law 80 claim. Furthermore, Defendant seemingly contradicts itself in its *Motion to Bifurcate Trial*, implying in a footnote that Plaintiffs indeed asserted a *dolus* claim, though incorrectly stating that it was

first raised in Plaintiffs' opposition to Defendant's motion for summary judgment.[2] (Docket No. 88 at 2 n.1).

The Court understands that Plaintiffs have asserted a contract law *dolus* claim in their amended complaints as well, having explicitly used the term therein. (Docket Nos. 38 at 12; 39 at 11). Although Plaintiffs often discuss the concept of *dolus* in conjunction with their Law 80 claim because deceit is an element of their constructive discharge theory as well, the Court does not believe this precludes a separate contract law *dolus* claim. Nor has Defendant filed a motion to dismiss Plaintiffs' contract law *dolus* claim for failure to meet the pleading standard or as untimely -- its supposed defect. (Docket No. 88 at 2 n.1). The Court thus treats Plaintiffs' amended complaints as raising both an employment law constructive discharge claim and a contract law claim of *dolus* and assesses Defendant's *Motions* with both claims in mind.

ii. Plaintiffs' Law 80 Claim for Constructive Discharge

Law 80 provides that private-sector employers must pay their non-termed employees an indemnity if they are fired without just cause. *See* P.R. Laws Ann. tit. 29 § 185a. "Just cause" includes discharge due to "[d]ownsizing made necessary by a reduction in

---

[2] Defendant states that "'[d]olo' was not alleged in the Complaint or Amended Complaint as grounds to invalidate Plaintiffs' consent to the Release Agreements and it is well-settled that Plaintiffs cannot amend their allegations through an opposition to a motion for summary judgment." (Docket No. 88 at 2 n.1).

the foreseen or prevailing volume of production, sales, or profits at the time of the discharge or for the purpose of increasing the establishment's competitiveness or productivity." Id. § 185b. Therefore, widespread layoffs in times of economic crisis constitute just cause.

Employees who are not directly fired but are induced to resign may still be eligible for the indemnity payments under the theory of constructive discharge. Constructive discharge under Law 80 includes "resignation of the employee caused by the actions of the employer directed to induce or compel him to resign, **such as** imposing or trying to impose on him more onerous work conditions, reducing his salary, demoting, or submitting him to derogatory criticisms or humiliations by deed or word." Id. § 185e (emphasis added).

The use of "such as" before the list of constructive discharge examples suggests that the statute provides a non-exhaustive list of possible constructive discharge scenarios. The Supreme Court of Puerto Rico has also stated that "[t]hese examples of constructive discharge supplied by the statute are not exhaustive." Rivera Figueroa v. The Fuller Brush Co., 180 P.R. Dec. 894, 907 n.27 (2011).

Nonetheless, Defendant argues that two paragraphs added to Law 80 in a 2017 amendment limited the type of employer conduct that could constitute constructive discharge. (Docket No. 94 at 4-

5). The Court disagrees. First, it should be noted that section 20 of House Bill No. 1244, Act No. 41-2022 (Act No. 41), repealed the two added paragraphs on June 20, 2022. Second, the language in the added paragraphs would still not have precluded Plaintiffs' theory of constructive discharge. Nothing within these two paragraphs suggests that Plaintiffs' theory of constructive discharge is untenable. In fact, the legislature's clarification that the employer's "actions shall be the result of motives, other than the legitimate interest of the employer of safeguarding the welfare of the business" is particularly instructive to the case at bar, as Plaintiffs' theory is precisely that Defendant's actions were not in the interest of a legitimate business interest, since Defendant allegedly knew that it would retain Plaintiffs' positions.

The Law 80 caselaw involving constructive discharge does not seem to preclude Plaintiffs' theory of liability either. Admittedly, prior cases involve traditional scenarios of constructive discharge, such as harassment or discrimination. However, the Court is not aware of any language in this Law 80 caselaw that hinders Plaintiffs' theory of liability. For example, some cases discuss how the standard for constructive discharge under Law 80 is "whether a reasonable person would feel compelled to sever the employment relationship as a result of the employer's actions" and that the employer's actions must be "divorced from

the legitimate interest of protecting the welfare of the company."³ Erazo-Vázquez v. State Indus. Prod. Corp., 2021 WL 3910248, at *23 (D.P.R. 2021) (internal quotation marks omitted) (citing Rivera Figueroa, 180 P.R. Dec. at 909). Those standards seem applicable here.

In sum, Law 80's text and caselaw do not seem to foreclose Plaintiffs' theory of constructive discharge. The Court thus analyzes Defendant's *Motions* with both that theory of liability under Law 80 and Plaintiffs' contract law *dolus* claim in mind.

**B. *Motion to Bifurcate Trial***

i. Bifurcation Standard

The Federal Rules of Civil Procedure provide that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). Also, "[w]hen ordering a separate trial, the court must preserve any federal right to a jury trial." Id.

The decision to bifurcate a trial is "a matter peculiarly within the discretion of the trial court[.]" Gonzalez-Marin v. Equitable Life Assur. Soc. of U.S., 845 F.2d 1140, 1145 (1st Cir. 1988) (citations omitted); *see also* Situ v. O'Neill, 2016 WL

---

³ The Court notes that some of the language in Law 80 cases seems to come from the two paragraphs that were repealed in June 2022, so their continued applicability is uncertain. Regardless, the language in question would not preclude Plaintiffs' claim.

9488667, at *1 (D.P.R. 2016). The court may consider whether separate trials would be more convenient to the parties, avoid delay and prejudice, promote judicial efficacy, result in duplicative evidence, or avoid juror confusion. *See* Situ, 2016 WL 9488667, at *1 (citation omitted). Courts may also consider the similarities between the issues sought to be tried separately, whether the claims are triable by a jury or a judge, and whether the posture of discovery suggests that the claims should be tried together or separately. *See* Reading Indus., Inc. v. Kennecott Copper Corp., 61 F.R.D. 662, 664 (S.D.N.Y. 1974) (citations omitted). "The party seeking to bifurcate has the burden of proving that separating the trial is necessary." Situ, 2016 WL 9488667, at *1 (citation omitted).

 ii. Analysis

  The Court declines to exercise its discretion to order separate trials for Plaintiffs' claims and Defendant's counterclaims. Plaintiffs' *dolus* claim and Defendant's counterclaims for breach of contract and unjust enrichment hinge on the Release agreement's validity. Defendant's alleged deceit with respect to the VEOP and Release is also a core element of Plaintiffs' constructive discharge theory; it calls into question whether Defendant had just cause for its actions towards Plaintiffs. The overlap of issues increases the likelihood that the evidence and testimony for the claims and counterclaims would

be duplicative in the event of bifurcation. Furthermore, proper jury instructions would mitigate any potential confusion around the different standards for each claim. It would also be more convenient to the parties and promote judicial efficacy to hold a single trial rather than two.

Defendant seeks a **preliminary bench trial** on its counterclaims **before a jury trial** on Plaintiffs' claims. A preliminary trial on the counterclaims would further delay trial on Plaintiffs' claims, which weighs in favor of holding a single trial. Moreover, "[w]hen ordering a separate trial, the court must preserve any federal right to a jury trial." Fed. R. Civ. P. 42(b). Plaintiff is entitled to a jury trial on both of its claims. A bench trial on the contract law issues involved in Defendant's counterclaims could thus deprive Plaintiffs of their right to a jury trial on those same issues, particularly in the context of Plaintiffs' contract law claim of *dolus*.

Defendant also argues that it will be unfairly prejudiced by evidence from its counterclaims that it views as irrelevant to Plaintiffs' Law 80 claim. The First Circuit has emphasized that Federal Rule of Evidence 403 protects "against *unfair* prejudice, not against *all* prejudice." United States v. Whitney, 524 F.3d 134, 141 (1st Cir. 2008) (emphasis in original) (internal quotation marks and citations omitted). "Evidence is generally deemed unfairly prejudicial if it has an undue tendency to prompt a

decision by the factfinder **on an improper basis**." Díaz-Casillas v. Doctors' Ctr. Hosp. San Juan, 342 F. Supp. 3d 218, 232 (D.P.R. 2018) (emphasis added) (citation and internal quotation marks omitted).

First, evidence relevant to Defendant's counterclaims for breach of contract and unjust enrichment is clearly relevant to Plaintiffs' own contract law claim. Second, under Plaintiffs' particular theory of constructive discharge, such evidence is also relevant to its Law 80 claim. Thus, evidence relevant to Defendants' counterclaims is not likely to "prompt a decision by the factfinder on an improper basis" and unfairly prejudice Defendant. Díaz-Casillas, 342 F. Supp. at 232 (citation and internal quotation marks omitted). In sum, the relevant factors tend to weigh in favor of holding a single trial in this case.

### C. *Motion in Limine*

#### i. Relevance Standard

Defendant's *Motion in Limine* reiterates Defendant's argument that facts unknown to Plaintiffs at the time they resigned are not relevant to Plaintiffs' Law 80 claim. The Court thus begins by expanding on the relevance standard.

The touchstone of admissibility is relevance. "[E]vidence must be relevant to be admissible[,]" In re Fin. Oversight & Mgtm. Bd. For Puerto Rico, 2019 WL 3565942, at *2 (D.P.R. 2019) (citations and internal quotation marks omitted), and

"[i]rrelevant evidence is not admissible[,]" Fed R. Evid. 402. Federal Rule of Evidence 401 provides that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and if the fact in question "is of consequence in determining the action." Fed. R. Evid. 401. Thus, evidence is relevant so long as it "move[s] the inquiry forward to some degree" on a fact of consequence. Bielunas v. F/V Misty Dawn, Inc., 621 F.3d 72, 76 (1st Cir. 2010) (citation omitted). The Federal Rules of Evidence "set a very low bar for relevance." United States v. Pereira, 312 F. Supp. 3d 262, 272 (D.P.R. 2018) (internal quotation marks and citation omitted). Therefore, evidence "which may prove or disprove a party's liability theory" is necessarily relevant. E.E.O.C. v. Ventura Corp., 2013 WL 550550, at *5 (D.P.R. 2013) (citation and internal quotation marks omitted).

Nonetheless, Federal Rule of Evidence 403 allows for the exclusion of evidence "if its probative value is **substantially outweighed** by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403 (emphasis added).

   ii. Analysis

Defendant's *Motion in Limine* seeks to exclude five emails from June 10-19, 2020 (Plaintiffs' Identification Nos. 1-5) and

any "testimony or argument regarding acts that occurred after [Plaintiffs'] commitment to resign[.]" (Docket No. 111 at 1). Defendant argues that such evidence and testimony is irrelevant to Plaintiffs' Law 80 claim and unfairly prejudicial.

The emails in question go directly to the question of deceit in the contract's formation. Accordingly, they are highly relevant to Plaintiffs' *dolus* claim, as well as its Law 80 claim under Plaintiffs' theory of constructive discharge. Testimony and argumentation regarding acts that occurred after June 10 -- the date that Defendant's allege Plaintiffs committed to resign[4] -- may also be relevant to either claim. Consequently, the evidence is not **unfairly** prejudicial, as it is unlikely to "prompt a decision by the factfinder on an improper basis." Díaz-Casillas, 342 F. Supp. at 232 (citation and internal quotation marks omitted).

---

[4] Defendant alleges that Plaintiffs' "commit[ted] to resign" on June 10, 2020. (Docket No. 111 at 8). The Court has already opined that the relevant resignation date is June 19, 2020, not June 10, as Defendant argues. (Docket No. 90 at 4). Although Plaintiffs applied to the VEOP on June 10, they had until June 19 -- their last day of work -- to sign the Release. Id. If they did not sign it by then, they risked being removed from the VEOP and considered for involuntary separation. Id. This suggests that their participation in the VEOP was not final until June 19; until then, they could have withdrawn from the VEOP and rolled the dice on whether their positions would be eliminated.

### III. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's *Motion to Bifurcate Trial* and **DENIES** Defendant's *Motion in Limine*. (Docket Nos. 88 and 111, respectively).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 10th day of January 2023.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge
